Good morning, Chief Judge Pryor, Circuit Judge Lutz. May it please this honorable court, my name is Marsha W. Mignott and I have the honor of being the appellant and counsel for the all prospective class members in the underlying matter which was filed April 23rd, 2023. Brief facts that are critical for this court to know in order to make its ruling in this case is between March 30th, 2018 and December 17th, 2018, the appellees via their agents engaged in criminal conduct of forgery in the first degree in violation of criminal code OCGA 16221 in that Doreen Mitchell forged the law firm document for the appellant in this case and used the forged document to create a receipt and presented the receipt to the appellee to create a purported attorney-client relationship. Chief Judge Pryor, as I understand it, the district court dismissed your complaint because it concluded that it lacked subject matter jurisdiction and it did so because it thought that because you were complaining about kind of a professional misconduct charges from the bar against you where, as I understand it, you prevailed in the Supreme Court of Georgia and those charges were dismissed but the district court operated under the assumption that the Supreme Court of Georgia had, under Georgia law, has exclusive jurisdiction over bar complaints and that's what we're here to review, is that decision. It seems to me, by the way, that I think the district court was wrong, okay? I don't think state law can define the subject matter jurisdiction of a federal district court. And the court is correct, Your Honor, and that is our position. I'll get directly to that point. The issue of subject matter jurisdiction, if the court would like me to address, under the Civil Rights Act of 1866, the district court is saying, even if there's a violation of the Civil Rights Act or 42 U.S.C. 1981, which is the premise by which the complaint was filed, that the district court does not have jurisdiction. I want to be clear that the appellant is not seeking to challenge anything associated with the disciplinary process that was successful before the Supreme Court, but seeks to challenge the apartheid disciplinary process that is occurring at the State Bar of Georgia as a  Your complaint of racial discrimination has been brought under 42 U.S.C. section 1981. Federal district courts have federal question jurisdiction to entertain a complaint under that statute, under section 1331 of 28 U.S.C., and that federal district court has subject matter jurisdiction in your view, isn't that right? That is correct, Your Honor. Right. And, you know, it might be that the district court was a little bit confused in that sometimes, let us say you had lost in the Supreme Court of Georgia, okay, and you had come to us complaining about that, and you had sought a review of that decision. Well, there's a doctrine called the Rooker-Feldman Doctrine that would have barred the district court from exercising jurisdiction over that. We don't entertain suits by state court losers where they come to federal court and want to get a review, but we don't have that situation because you didn't lose in the Supreme Court of Georgia. You won. So, the Rooker-Feldman Doctrine wouldn't have any application, and so we're, that's really the only thing I can think of that the district court might have. I think the district court, Your Honor, also tried to use younger, and I don't think younger applies here either because the younger requires that there be at least some type of implication of state law. It also requires that the matter be ongoing. Your proceeding is over and you won. That is correct. That is correct, Your Honor. So, our position is that the appellee in this situation does not have unbridled immunity because that's the argument that... There may be other jurisdictional problems with this complaint. There may be other issues with it. I'm not sure, Ms. Mignot, and I don't think we can settle here today, whether you have, I mean, you sued the Barr Foundation. I'm not sure that that's the right defendant. There may be problems here with this complaint, but it seems to me we're here on a fairly narrow question, and that is whether the district court was wrong to conclude that this complaint should be dismissed because only the Supreme Court of Georgia had exclusive jurisdiction to entertain the issue. That is correct, Your Honor. Considering the class allegations and the relief that you're seeking here, are you asking to undo discipline that was done to, I mean, not you because you won your, but the class that you're seeking, are you trying to say, look, these people were disciplined in a racially discriminatory manner, I'll undo that discipline that they got? We are seeking to prevent that type of discipline going forward, so not to correct anything behind that has already taken place, but we realized in this case that there is a system in place that treats our white counterparts different from black counterparts as it pertains to the implication or the application of the state bar of Georgia rules. I have given some examples of that in the record here, where if a white male attorney or a white female attorney gets a grievance filed against them, despite the same rule violation that goes through the process, that the black or African-American or attorneys of color are being treated disparately, more harsher treatment. So we're trying to prevent it in terms of preparing a class so that future African-American attorneys or attorneys of color do not get... There was something in the past that was like sanctioned for, I don't know, a $500 sanction or something that they got. You're not trying to get that back and say that that should be undone? Absolutely not. We're trying to prevent future racial discriminatory application of state bar of Georgia disciplinary process. That's part of the relief to change how the state bar disciplines the lawyers in so far as it is racially discriminatory. That is correct. Okay. Ms. Mignot, do you have anything else? I just wanted to address that issue before the court and respectfully request that the trial court's order be reversed and the matter remanded. Thank you. Thank you. You've saved some time for rebuttal. Let's hear it from Ms. Mignot. Thank you. Good morning, and may it please the court. My name is Patrick Arndt, and I'm here on behalf of the Appellees, which are the State Bar of Georgia Foundation, State Bar of Georgia Office of General Counsel, and William Hertenberg, who is the State Bar of Georgia Prosecutor. I understand the court's jaundiced eye or skepticism towards the ruling from the district court that it lacks subject matter jurisdiction over this case. It seems to be indefensible. Well, I would just say that with that wonderful prompt. I understand there may, Mr. Arndt, there may be problems with this case. In particular, which defendants are sued and all that, but as far as what the district court said as its basis for dismissal, it seems to me that's wrong. Well, and I would like to touch on some of the alternate grounds that were fully briefed at the trial court but were not ruled on, but on the specific question of subject matter jurisdiction. Federal courts have long recognized the extremely high interest a state has in regulating its legal profession. In the Middlesex case, which is a U.S. Supreme Court case from 1982, I'm going to quote now, it says, states have an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses, the judiciary as well as the public is dependent upon professionally ethical conduct of the attorneys and thus has a significant interest. And if the bar believes that it will be sued for money damages, declaratory relief or injunctive as it pertains to a particular disciplinary action, it will not have the free hand that needs to employ the discipline that's necessary to maintain those standards. I really could see your argument if Ms. Mignot was coming and saying, look, they disciplined me, that's wrong, we should have done that. I could see some argument that the federal courts should kind of stay out of that and let Georgia, you know, discipline attorneys or not, depending on how Georgia wanted to do it. I'm still not sure whether that would be right, but I could see that. But it seems like her complaint really is just, look, she had an experience, she's aware of other people that had an experience and she thinks that she was mistreated during that on the basis of her race, she thinks that other people have done the same thing and she's seeking injunctive relief to make some modifications to Georgia's process going forward. How is that challenging what, you know, how is that going to do anything to sort of the state of Georgia's ability to impose attorney discipline? So I think there's a lot there. I think, first of all, if she is just asking for injunctive relief that says do not discriminate on the basis of race going forward, then that would be, to me, too broad of an injunction to ever enforce. Basically — But race is a matter, so I think we're talking about the jurisdictional side of things. Sure. And I think, again, I think it would be an odd result that if Ms. Mignot had gone through all this process and had been given a $25 fine for her actions, the Court would lack subject matter jurisdiction over her action. But the fact that it did not impose discipline on her — Well, it's not that. It's what she's challenging. If she says, if the complaint — let's assume she had gone through the process and got the $25 fine. If the complaint was, I'm not challenging that I violated a rule or any decision of the Georgia Supreme Court, but I believe that I got this fine because of my race and someone who is of a different race did not get the fine, that would be different and not challenging the order itself, which would put it in the Feldman and Rooker, but instead would put it outside of that in challenging a collateral consequence as a result of a state court judgment. Well — Right. I don't know that I would agree with that, and also I'd refer the Court to the Davis — I'm not consistent with Baer and any number of our cases or more modern cases interpreting the Rooker-Feldman doctrine as only being challenges directly to the order that is being challenged and not to anything separate and independent of the order being challenged. Well, and first of all, I would say it's not — she's not simply asking for injunctive relief. She's also asking for compensatory damages, which I think goes into later arguments that they may have about judicial prosecutorial qualified immunity, but I'd also say there's recent cases that have been after Baer that have also said that these sort of individualized arguments about a particular person's disciplinary experience are not capable of being brought in federal court. It's the Davis v. Namias case, which is an Eleventh Circuit case from 2022. Some of the charges were allowed to proceed, but the ones that involved particular decisions that were made about a particular attorney, those claims and all of the claims for money damages were thrown out. Let's focus a bit on what the district court ruled. Do you agree that its reasoning was wrong? I do not agree. No, Your Honor. I think that for — And that because under state law, the Supreme Court has exclusive jurisdiction over issues of attorney misconduct, that that means that there can be no subject matter of jurisdiction in a federal court over a complaint that challenges going forward on an ex parte young basis a state system as being racially discriminatory against the officials, who we will assume for the moment, who administer that system. Do you agree that because Georgia says we have exclusive jurisdiction over those issues of attorney misconduct, that that bars federal jurisdiction over that kind of complaint in the district court, the district court's right? So what I would say is, based on the facts and allegations of this case, absolutely it's correct. Some of these doctrines do have exceptions to them, as the court is aware of — Mr. Arnn, let's not be slippery, okay? Let's talk about what the district court said in its order. Have I properly characterized what it said? You have. Yes, Your Honor. And you're saying that's a correct statement of law? Yes, Your Honor. Okay. And if I could just finish my point on Younger — Let me back up and try to untangle this a little bit. I'll do my best. It is certainly true that if the complaint had said what you are saying — I'm not sure it does — but if it had said what you are saying, and if there had been an order of the Georgia Supreme Court at that time that went against the plaintiff, that there might be an abstention to subject matter jurisdiction based on Feldman directly, because Feldman was a disciplinary proceeding, very close to what you're saying had happened here. But even under Feldman, the court had subject matter jurisdiction. In other words, subject matter jurisdiction is different than Rooker-Feldman abstention. You still have, under 1381, a federal question that has been brought pursuant to a cause of action that was created by Congress here, 42 U.S.C. 1981. The court has subject matter jurisdiction of it. But there may be an abstention for why the district court should or cannot exercise that jurisdiction. Those are different things. Are they not? And I understand the point that —  They are. Yes. They are. Yes. And I understand that — So, sorry. The district court here didn't say anything in abstention. I think that's probably what she was referring to. But didn't say anything in abstention. What she said was, the federal courts don't have jurisdiction over 1981 claims. Because the Supreme Court of Georgia — Because the Supreme Court of Georgia is the only place that you could file these things. Right. And I think the — correct. And I think the argument would be, better practice would have been to say, we have subject matter jurisdiction, but we are abstaining out of — It may have been that that was what was intended. It may have been that's what was in somebody's head. But that's certainly not the order that we have. So, I guess getting back to where the Chief Judge started, both with your opposing counsel and you, which is, it isn't right, based on the order that we have in front of us and what it says, that a federal court doesn't have, in the initial stages, subject matter jurisdiction under 1331 for a federal question, right? Correct. So, that's wrong. So, that's wrong. The district court was wrong. So, that's wrong. And then — correct. And then it gets — Go ahead. So, then the next question is, should we agree to one of the alternative bases you have, either Rooker-Feldman or Younger or some other doctrine out there? And I think what the Chief Judge talked about with your opposing counsel here was, maybe some of those doctrines apply and maybe some that aren't brought up, for example, 11th Amendment immunity, maybe some of those apply. But we're the best forum because none of that has been litigated or really briefed extensively. And maybe we should send it back for the district court to do that in the first instance. Do you disagree with that? Well, I mean, I would disagree with that. I think there are other grounds that the court could have reached the same result on. And I think the judicial and prosecutorial immunity were certainly fully — Some of these other threshold ones, like — Rooker-Feldman. Assuming it applied. I don't see how it could. But assuming it applied, that go more to our jurisdiction, 11th Amendment immunity, for merits, immunity-based questions, qualified immunity, prosecutorial immunity, judicial immunity, whether there was a state failure to state a claim here or not. Those go more to the merits. And we really can't get there without going through a lot of jurisdictional hoops before we get there. And those hoops seem much more well-suited for the district court than us right now, right? And I understand that, sure. And I would say that the posture of this case is unique because when it was filed, there was an ongoing disciplinary process. It was not filed at the termination of the process. So the ruling on Rooker-Feldman can't possibly apply, right? But maybe Younger did. Sure. And so at the time, I think the focus on in the initial motion to dismiss, it's on Younger and to the extent — and a ruling is reached in Rooker-Feldman. And then, you know, the disciplinary action was resolved before the court made its ruling on our motion to dismiss. I mean, it seems to me we don't have to wait on Rooker-Feldman. It's apparent from the record that Rooker-Feldman cannot supply an alternative basis for dismissal. But everything else in terms of alternative grounds are best suited for the district court to resolve in the first instance. What about Younger? So do you think — because to be fair to the district court, I mean, I do think the district court phrased this incorrectly. But I feel like it's trying to get at the kind of thing you were talking about, which is like, look, the state of Georgia is going to regulate its lawyers the way it wants to. The Georgia Supreme Court is where you need to make these arguments. There's an ongoing disciplinary proceeding. Like, go there instead. Would this be proper Younger abstention? I think it depends on when the argument is raised. I think certainly at the time the complaint was raised, there's no argument about it because there was an ongoing disciplinary action. The opposite, meaning because it's ongoing, Younger would apply because there is a basis in which to — Correct. I have a question. I thought — and I think this is either in the motion to dismiss response or in the motion that there was a discussion with the judge who — I guess the way it works is someone's — a judge is appointed as sort of the fact finder for the Supreme Court in making these decisions. Special master. Florida has a similar procedure. And in fact, some of these — the racial component of this was actually brought up to the judge, was it not? To the special master, yes. Ms. Mignot said that the entire process was racist against her, including the special master. And so for Younger purposes, I think we've already said, and I think the Supreme Court has intimated, that judicial proceedings are — I'm sorry, the bar proceedings are the kind of open proceedings that meet the first two elements. And then the second — the last question is, is this an avenue which you can bring this up? Based on your allegations in her complaint, is this something that could have been brought up, especially a class-wide sort of regime of discrimination? Is that — Could that possibly be brought up and litigated in the underlying state proceedings? Not within the underlying disciplinary action, no. I think a separate action at the Georgia Supreme Court could have been brought. Let me just ask you this hypothetical, which I sort of asked two cases ago. So let's just say the Georgia bar, for whatever reason, has like just a racially discriminatory rule, right? It says like — I mean, something just stupid, right? Like black people have to pay an extra fine or something. Yeah, the higher bar fees. Right, yeah. Sure. Probably not that much of a hypothetical. That probably was like the rule they had, you know, like 70 years ago or something. So how would you go about suing over that rule? Oh, I mean, it's well-established that you can make constitutional challenges to specific bar rules. That's no problem. I mean, that's well-established in all the cases on this. It's just when you say, in my particular — First Amendment, right? Sure, yeah. So why would it be different if she's not — she's not pointing to a specific rule, but she's saying, look — It's a policy. It's a policy. It's a practice. It's, you know, they didn't write it down because they know it's a problem, but they do it anyway. Why would we have a different outcome just because she can't identify a rule that she's challenging when she's identifying, you know, an unwritten rule, as it were? It would require the review of an individualized idiosyncratic disciplinary process. And I think for that, I think deference is necessary to the licensing body of the profession of lawyers in the state of Georgia for the reasons I stated earlier. The profession of law is different from other professions. The medical composite board of Georgia doesn't say, this is a specific jurisdiction where you can bring challenges to this. The practice of law is above all of those things. And I think in order for those powers to be effectuated with any effectiveness, there has to be the authority to do that without feeling like you're going to be second-guessed and sued for money damages as a result. Who would be the right defendant in the challenge to the discriminatory regulation? The correct defendant would – the State Bar of Georgia is the entity that handles discipline. And there's a bar rule that says the State Bar of Georgia is an entity that is capable of suing and being sued. So again, without conceding that any of that stuff would be feasible or whatever jurisdiction it would be in, that would be the entity. I think that's part of Judge Brasher's question and mine too. Who is the proper official to sue? The proper official to sue, I assume, would be general counsel of the State Bar of Georgia. I believe that would be the case. She didn't sue any of those people, right? I mean, just to be clear. It depends on which lawsuit. Now, since she's got four that arose from this, she did sue the general counsel of the State Bar, but that was the state court case that was dismissed. Thank you. Thank you. In response to opposing counsel, I just wanted to draw to the Court's attention the Middlesex case that was referenced is a case where the Supreme Court of the United States reversed the decision that the State only had exclusive jurisdiction to govern the practice of law because the issues were separate from whether or not the person was challenging their disciplinary actions. They were alleging fraud and those kind of things. So I just wanted to cite for the record that the case of Middlesex is in favor of the appellant because that's when the Supreme Court said, no, no, no, we're reversing your decision and sending the case back down to the Third Circuit. As it pertains to a remedy, the appellants and the prospective class members have no remedy, and that's the argument that was made by Mr. Arndt in the Superior Court of Fulton County. When the action was filed there, he said there's no remedy at law, nor is there any remedy at equity. So if the appellants don't have a remedy in Superior Court to bring an action for discrimination and they don't have a remedy to seek a class action for discrimination or a discriminatory disciplinary proceeding in the Supreme Court because it's a court of review, it's not a court of record, and they cannot come to federal court to seek redress, then they're going to be damaged and harmed prospective class members that are coming through, that are in law school right now as we speak. I want to get back to what I think is the narrow issue in front of us. The district court dismissed because it ruled that the Supreme Court of Georgia had exclusive jurisdiction. You agree with me that that was error. That is correct, Your Honor. And really, we don't need to say much more, do we? I don't think so. We have AJ and her man and her workers. Understood. You need to do some work on this and make sure you've got the right defendants and actually try to figure out that you're suing the right people over the right stuff. I'm glad you said that, Judge Brasher, because we've asked on numerous occasions and it's being hidden. It's not being provided. Well, I think we understand your case, Ms. Mignot. We appreciate your argument this morning. We're going to be adjourned for the week. Thank you to the panel for your time. All rise.